**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RB RESTORATION, INC.,** | |
| **Plaintiff,** | **Civil Action No. 21-19770 (ES) (JSA)** |
| **v.** | |
| **MOSAIC, TERRAZZO AND CHEMICAL PRODUCT DECORATIVE FINISHER MASONS WORKERS ASSOCIATION LOCAL NO. 7 OF NEW YORK & VICINITY OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, *et al.*,** | **OPINION** |
| **Defendants.** | |

**ALLEN, U.S.M.J.**

Before the Court is the motion of Defendants Mosaic, Terrazo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York & Vicinity of the International Union of Bricklayers and Allied Craftworkers ("the Union"); Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (collectively, the "Local Funds"), and Trustees of the Bricklayers & Trowel Trades International Pension Fund and the International Masonry Institute (collectively, the "International Funds," and together with the Local Funds, hereinafter collectively referred to as the "Funds"); and the Marble Terrazzo and Specialty Contractors Association (the "Employer Association") to transfer this case to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).[1]  (ECF No. 5).  Plaintiff, RB Restoration, Inc. ("Plaintiff" or "RB Restoration"),  opposes the motion.  No oral

---

[1] The Court will sometimes refer to all of the Defendants collectively as "Defendants."

argument was heard pursuant to Fed. R. Civ. P. 78.  After carefully considering the papers submitted in support of and Plaintiff's brief in opposition to the motion,[2] and for good cause shown, and for the reasons set forth below, Defendants' motion to transfer is **GRANTED**.

## I.    BACKGROUND

This case arises from a dispute relating to the parties' rights and obligations under a collectively bargained agreement ("CBA") between RB Restoration and the Union. As alleged in the Complaint, RB Restoration is an independent construction contractor with its principal place of business in Hillsdale, New Jersey.  (Compl., ¶ 1.)[3] RB Restoration specializes in terrazzo installations.  (Plaintiff's Br. 1; ECF No. 12).  The Union's members are tile, marble, and terrazzo workers.  According to RB Restoration, to hire members of the Union, RB Restoration had to sign the CBA, pay union wages, and make contributions to designated employee benefit funds, which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, *et seq*., and RB Restoration further claims to have operated in accordance with the Labor Relations Management Act of 1947 ("LMRA"), 29 U.S.C. § 185, *et seq*.  (Pl's Br. 1-3; Compl., ¶¶

---

[2] Plaintiff's counsel's supporting certification is teeming with unsupported factual allegations. (*See* ECF No. 12 and 12-1). Further, counsel's certification is replete with factual and legal arguments as well as facts that do not appear to be within counsel's personal knowledge. (*See* ECF No. 12-1). Local Civil Rule 7.2(a) provides, in relevant part, "[a]ffidavits, declarations, [and] certifications . . . shall be restricted to statements of fact within the personal knowledge of the signatory.  Argument of the facts and the law shall not be contained in such documents.  Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both."  L. Civ. R. 7.2(a).  *See Siu Ching Ha. V. 4175 LLC*, 2018 U.S. Dist. LEXIS 50410 (D.N.J. Mar. 27, 2018) (District Judge Salas). As plaintiff's counsel's certification violates Rule 7.2(a), the Court will disregard the certification. Counsel is reminded that the local court rules are mandatory, and the Court would be well within its discretion to impose sanctions for failing to comply with the court rules. *See Delguercio v. NCI Constr. Corp.*, 2007 U.S. Dist. LEXIS 89028 (D.N.J. Dec. 4, 2007) (District Judge Martini).

[3] In support of its factual allegations in opposition to the motion, RB Restoration fails to cite to the Complaint.  As such, the Court conducted its own review of the Complaint and the exhibits annexed to the two declarations of defense counsel John M. Harras, Esq. (ECF Nos. 6 ("Harras Decl.") & 14-1 ("Harras Reply Decl.")), to determine the factual allegations.

19, 34-36).

The Funds are responsible for, *inter alia*, ensuring the receipt of employee benefit contributions.  (Compl., ¶¶ 3-4; Harras Decl. ¶¶ 7-8: ECF No. 6). The Employer Association is a collective association of employers who designate representatives to negotiate collective bargaining agreements with the Union.  (Compl., ¶ 5).  The Complaint further alleges that in February 2021, the Funds, pursuant to the CBA, requested an audit (herein "the Audit") of RB Restoration's books and records to determine if it had remitted benefit contributions for every hour of work performed by its employees in the trade and geographical jurisdiction of the CBA. (Compl., ¶ 47; Harris Decl., ¶ 9: ECF No. 6).

The scope and outcome of the Audit are at the heart of the parties' dispute and this case. RB Restoration contends that the Funds' attempted Audit, among other things: (1) exceeded the scope and time periods authorized by the CBA (which had expired); (2) sought information relating to non-Union employees; and (3) demanded the production of documents not authorized by the CBA, including confidential and proprietary business information and tax returns, which it contends are protected from disclosure.  (Compl., ¶¶ 47-53).

Defendants counter that Plaintiff failed to supply its complete books and records and failed to cooperate with the Audit.  (Defs.' Br 1-2).  Defendants demanded Plaintiff's complete and unredacted books as well as records and advised that, if not provided, the Funds' Auditors would issue a report based on the information available.  (Defs.' Br. 2; Harris Decl., ¶¶ 16-18). Plaintiff did not provide additional information.  (Compl., ¶ 52; Harris Decl., ¶ 15).  Defendants further assert that as a result, on October 8, 2021, the Funds' auditors issued an Audit based on actual and estimated findings of delinquent contributions owed by Plaintiff to the Funds and identified a total delinquency owed, for the period of January 1, 2018 through June 20, 2021, of $6,419,805.09,

consisting of (1) delinquent contributions of $4,561,075.58; (2) interest thereon of $1,043,681.26; (3) liquidated damages of $811,560,25; and (4) audit costs of $3,488.  (Compl., ¶ 54; Harris Decl., ¶¶ 16, 21).

**A.      The Eastern District of New York Action**

On November 4, 2021, the Funds filed an action in United States District Court for the Eastern District of New York against RB Restoration, captioned *Trs. of the Mosaic and Terrazzo Welfare Fund, et al. v. RB Restoration, Inc.*, Civ. A. No., 21-6169 (FB) (LB) (the "EDNY Action"), wherein the Funds seek to recover the amount of the Audit pursuant to Sections 502(a)(3) and 515 of ERISA and Section 301 of the LMRA.  (Defs.' Br. 2; Harris Decl., ¶¶ 18-21 and Exh. G: ECF No. 6),   Defendants essentially assert that the EDNY Action, which was filed first, is the mirror image of the present action filed by Plaintiff.

**B.      The District of New Jersey Action**

On November 5, 2021, RB Restoration filed the present action in this Court pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and ERISA § 1132 (Count One). (Compl., ¶¶ 6-9).  The Complaint seeks, *inter alia*, (1) a declaration regarding the parties' rights and obligations under the CBA, and (2) a declaration regarding the propriety and legality of Defendants' demand for payment and books and records in connection with the Audit.  The Complaint also alleges violations of ERISA, in particular, that Defendants failed to provide annual reports and have demanded illegal and excessive payments (Count Two).  (Compl., ¶¶ 6-9, 72-83).

**II.      MOTION TO TRANSFER**

On December 8, 2021, Defendants filed the instant motion to transfer this action to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a) .  (ECF No. 5).  Defendants argue that the EDNY Action was commenced first, and thus the "first-

filed rule" compels transfer of this case to the Eastern District.  (Defs.' Br. 3).  Defendants further contend that transfer is appropriate, consistent with the relevant factors enunciated by the Third Circuit in *Jumara*, because (1) the two cases involve the same primary parties, same audit, and same issues, and that this case should be transferred to avoid separate lawsuits over the same subject in different courts before different judges; (2) the majority of witnesses involved in this case are located in the Eastern District; and (3) Plaintiff's counsel is seeking to avoid litigation in the Eastern District of New York where sanctions are pending against him in another case.  (*Id.*)

Plaintiff opposes transfer.  It contends that the Eastern District of New York is not a proper venue for this case, pursuant to 28 U.S.C. § 1391, and thus, the case cannot be transferred to that district.  (Pl.'s Br. 5-6).  Plaintiff also contends its choice of forum is entitled to deference and that the convenience of the parties and witnesses do not favor transfer.  (Pl.'s Br. 4, 6). Finally, Plaintiff contends that the first-filed rule should not apply because, among other reasons, Defendants have engaged in forum shopping, there is no risk of conflicting judicial determinations because Plaintiff has not yet been served in the EDNY Action, and Defendants filed the EDNY Action in bad faith. (Pl.'s Br. 8)

On reply, Defendants argue that venue is proper in New York, both pursuant to section 1391 and the special venue provisions of ERISA, *see* ERISA § 502(e)(2).  (Defs.' Reply Br. 2-4). Defendants also contend that the interests of the parties and witnesses favor transfer.  (Defs.' Reply Br. 5).

## III.   DISCUSSION

## A.   Legal Standard

Section 1404(a) confers federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the

convenience of parties and witnesses."  28 U.S.C. § 1404(a).  The decision to transfer a case under § 1404(a) rests within the sound discretion of a district court.  *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Cadapult Graphic Sys.,Inc. v. Tektronix, Inc.,* 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses....'" *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

As directed by the Third Circuit Court of Appeals in *Jumara*, the reviewing court must balance private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer.  *See Jumara v. State Farm Ins. Co.*, 55 F. 3d 873, 879 (3d Cir. 1995).  The moving party bears the burden of establishing "both the propriety of venue in the transferee district and jurisdiction over all of the defendants."  *LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)).  Once the court determines that jurisdiction and venue would be proper in the transferre district, the court, then, must consider two sets of factors identified by the Third Circuit in *Jumara*.  *See Jumara*, 55 F.3d at 879.

The first category of factors considers the private interests of the litigants and include:  (1) "plaintiff's forum preference;" (2)" defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience to the parties as indicated by their relative physical and financial condition;" in light (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."  *Id*.

6

The second category of factors considers the public's interests and include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious or inexpensive;" (3) "the relative administrative difficulty in the two for a resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with applicable state law in diversity cases." *Id.* at 870-880 (internal citations omitted).

The list of factors in both the private and public categories is comprehensive. However, a section 1404(a) analysis must be flexible and viewed based on the unique facts of the particular case. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988)). While the moving party bears the burden to justify a transfer, it is "not required to show truly compelling circumstances for . . . [change of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (citations omitted).

## B.  <u>Venue in the Eastern District of New York</u>

Preliminarily, this Court must first determine whether this action could have been brought in the transferee district – here, the Eastern District of New York – based on both jurisdiction and venue being proper. *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006) (citing *Shutte v. Armco Stell Co.,* 431 F.2d 22, 24 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 (1971)).

The parties do not dispute that the Eastern District of New York would have subject matter jurisdiction over this case asserting federal law claims or that the parties are subject to personal jurisdiction in that forum. However, the parties dispute whether a substantial portion of the events giving rise to the claim occurred in New York, and thus whether venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2).

7

Defendants further contend that there is an independent basis for venue to exist in the Eastern District of New York.  According to Defendants, ERISA's specialized venue provision, which allow for suit to be brought in any forum that has personal jurisdiction over the fund at issue, has been triggered by Plaintiff's assertion of ERISA violations in the Complaint.

This Court agrees. Plaintiff has asserted ERISA claims in its Complaint.  (*See* Compl., ¶¶ 6-9, 72-83).  The ERISA statute contains a special venue provision that provides: "[w]here an action under this title is brought in a district court of the United States, it may be brought in the district where the plan is administered . . . or where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  When the ERISA venue provision is satisfied, Section 1391(b) is also satisfied, and transfer to a district is permissible pursuant to 28 U.S.C. § 1404(a).  *See, e.g.*, *Mazzarrino v. Prudential Ins. Co.*, 955 F. Supp. 2d 24, 29 (D.D.C. 2013) ("The threshold inquiry in a § 1404(a) analysis is whether the action could have originally been brought in the proposed transferee district.  That test is satisfied here under ERISA's venue provision, which authorizes an ERISA plaintiff to bring suit in the district where the plan is administered . . . or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2)…."); *Mayfield v. Boeing Corp.,* 2007 WL 9683907, at *3 (M.D. Tenn. June 4, 2007).

The plan at issue here is administered in New York.  Further, it is undisputed that Defendants are citizens of New York.  (Defs.' Reply Br at 4).  As a result, venue would be proper in the EDNY pursuant to ERISA § 502(e)(2).  Therefore, the Court finds that this action could have been commenced in the Eastern District of New York.  The Court deems this threshold issue met.[4]

---

[4] Defendants argue that venue would be proper in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(1), because RB Restoration is a New York corporation that is subject to personal jurisdiction in New York.  (Defs.' Reply Br. 3).  As a threshold matter, the Court notes that it is

C.      **Transfer Based On The First-Filed Rule**

The Court now must first determine whether transfer to the Eastern District of New York would be appropriate pursuant to the "first-filed rule." Thereafter, the Court will consider the appropriateness of transfer based on the relevant private and public factors.

As the Third Circuit has explained, "'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (internal citation omitted). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Id.* (internal citation omitted); s*ee Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993) (noting that when there are related suits "involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit."). "Consistent with these principles, the first-to-file rule gives courts the power to stay, enjoin, or transfer a later-filed case." *Techno Prods. Inc. v. Glove Trends, Inc.*, 2019 WL 7184544, at *4 (D.N.J. Dec. 26, 2019). "The letter and the spirit of the first-filed rule ... are grounded on equitable principles" and "the rule's

---

unclear whether RB Restoration is a New York corporation as Defendants have submitted conflicting positions on whether RB Restoration is incorporated in New York versus New Jersey. (*Compare* Harras Decl. at Exh. G *with* Harras Reply Decl., at Exh. B). Plaintiff describes itself as a New Jersey "citizen" without identifying its state of incorporation. (Compl., ¶ 1; Pl. Opp. Br. at 2). The Court need not resolve this discrepancy as Defendants' venue argument misses the mark. RB Restoration is the *Plaintiff* in this case; the venue statute is concerned with *Defendants*. The proper inquiry is whether this suit filed against Defendants *as* defendants - could have been properly commenced in the Eastern District of New York. It clearly could have been, as Defendants are subject to personal jurisdiction in New York, both because they have conceded the issue and because they are located there. 28 U.S.C. § 1391(b)(1). Thus, this Court independently finds that venue would also be proper in the EDNY based on 28 U.S.C. 1391(b)(1).

primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *EEOC*, 850 F.2d at 977.

When there are two related cases,[5] "the first filed rule applies whether the cases were filed one day or one year apart." *Electronic Control Sys. Inc. v. Wineguard Co.*, 2010 WL 11497066, at *5 (D. Minn. Jan. 25, 2010); *see also Wakaya Perfection, LLC v. Youngevity, Int'l, Inc.*, 910 F.3d 1118, 1125 n.5 (10th Cir. 2018) (The first-to-file rule applies regardless of how many days separate the filings.); *Family Dollar Stores, Inc. v. Overseas Direct Import Co., Ltd.*, 2011 WL 148264, at *3 (W.D.N.C. Jan. 18, 2011) (applying rule to case filed one day later); *Sophos Inc. v. RPost Holdings, Inc.*, 2014 WL 2434637, at *3 (D. Mass. 2014) ("[T]he mere passage of a single day is enough to trigger the first-filed rule." (*citing Veryfine Prods. Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000)).

The first-filed rule, however, "is not a mandate." *Id.* A court may deviate from the rule where there are "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* (quoting *EEOC*, 850 F.2d at 976). Ultimately, the first-filed rule is an equitable determination made on discretionary, case-by-case basis. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 216 (3d Cir. 2016); *Individor Inc. v. Dr. Reddy's Labs*, 2018 WL 4921541, at *7 (D.N.J. July

---

[5] Courts in the Third Circuit disagree on "the required extent of overlap between the earlier and later filed matters" in order to invoke the first-filed rule. *Coyoy v. United States*, 526 F. Supp. 3d 30, 43 (D.N.J. 2021). One line of cases requires that the later-filed case must be "truly duplicative" of the earlier case, including the same issues and the same parties; a separate line of cases contend that the matters need only have "substantial overlap" in their issues and the parties need not be identical. *Compare Coyoy*, 526 F. Supp. 3d at 43 (discussing split and adopting more stringent "truly duplicative" standard), *with Tekno Prods. Inc. v. Glove Trends, Inc.*, 2019 WL 7184544, at *5 (D.N.J. Dec. 26, 2019) (discussing split and adopting "substantial overlap" standard). There is no need to resolve this question here because the parties do not argue this point in their briefing. Indeed, Plaintiff has stated that it intends to move to transfer the EDNY Action to this Court (ECF No. 19); therefore, the parties seem to agree the cases are related. Under either approach, as described *infra,* the instant action and the EDNY Action involve the same essential parties as well as the same claims and issues.

12, 2018) (courts "primarily rely on common sense and historical practice" when applying the first filed rule).

Defendants have established that the first-filed rule applies in this case.  The EDNY Action was filed on November 4; Plaintiff filed this case on November 5.   Both this suit and the EDNY Action involve the same primary parties and witnesses; the same CBA; the same Audit; and the need for the reviewing court to consider the appropriateness of Defendants' demand to review RB Restoration's books and records.  (Defs.' Br. 5).  This case and the EDNY Action are not merely substantially related cases; they appear to be mirror images of the *same* case, pending in two different courts.  In the EDNY Action, Defendants seek to recover the amounts owed based on the results of the Audit.   In this case, Plaintiff seeks is to invalidate the Audit and claims it was excessive and illegal.  Logically, Plaintiff's claims in this case could be asserted as counterclaims in the EDNY Action.  Moreover, while the causes of action may be slightly different, and RB Restoration has also sued the Union and the Employer Association in the instant action, the subject matter is the same in both civil actions.  This is the paradigm example of when the first-filed rule should apply -- allowing these two cases to proceed in different courts would be a tremendous waste of judicial efficiency and resources.  Further, it would present a high risk for conflicting judicial determinations.  Indeed, even Plaintiff agrees the cases should be litigated in the same court (and perhaps implicitly suggests they should be consolidated) – as demonstrated by its stated intention to move to transfer the EDNY Action to this district.  (ECF No. 19).  Thus, the only real question is which court should hear the two cases.  Applying the first-filed rule, that forum should be the Eastern District of New York.

Plaintiff summarily offers a few conclusory, but unpersuasive, reasons why the first-filed rule should not apply in this case.  (Pl.'s Br. 8).  First, Plaintiff contends that venue is not proper

in the Eastern District of New York.  However, the Court has already determined that venue is appropriate there (*see supra* at 7-9).  Second, Plaintiff claims that Defendants filed suit in bad faith and in violation of Fed. R. Civ. P. 11.  From the record presented, the Court cannot discern any bad faith.  Third, Plaintiff claims that Defendants have engaged in forum shopping, but again, this position is not supported by the record.  Defendants have explained that they are based in New York and regularly litigate in New York.  (Defs.' Reply Br. 7).  There is nothing unusual about a New York-based entity filing in its home forum.  Fourth, Plaintiff confusingly argues there is no risk of conflicting rulings between this Court and the Eastern District of New York because Plaintiff has not yet been served in New York.  This argument is a non-starter.  The instant action is in its early stage, and thus not remotely near a resolution on the merits.  Accordingly, the risk of inconsistent rulings is obvious given the presence of two nearly identical cases pending in two different forums.[6]

In short, the first-filed rule applies in this case.  Therefore, transfer of this case to the Eastern District of New York is appropriate. **As such, while the Court need not consider the propriety of transfer under the applicable** *Jumara* **factors, out of an abundance of caution, the Court will do so.**

**D.**     **The *Jumara* Factors**

The parties devote little time to addressing the *Jumara* private and public interest factors beyond disputing what weight should be afforded Plaintiff's choice of forum and whether the relevant witnesses and documents are located in New York versus New Jersey.  This Court undertakes its own review of the factors rather than assign any significant weight to those few

---

[6] Defendants also contend that, in fact, Plaintiff was served with the EDNY Action Complaint on November 9, and have provided an affidavit of service to that effect.  *See* Harras Reply Decl., Ex. A; Defs.' Reply Br. 8.

factors addressed by the parties in their respective submissions.

Considering the private interest factors first, Plaintiff's choice of forum is not entitled to much, if any, deference in this case.  In a Section 1404(a) analysis, a plaintiff's choice of forum receives deference, particularly when choosing its home forum.  *See Sandvik v. Continental Ins. Co.*, 724 F. Supp. 303, 307-08 (D.N.J. 1989).  However, as the Court previously noted, Plaintiff's state of incorporation is unclear, and thus, does not support retaining this case.  While it seems undisputed that Plaintiff's principal place of business is in New Jersey, which would support a finding that Plaintiff has chosen its home forum, that choice is entitled to essentially no deference in this case because of the first filed EDNY Action.  *See, e.g.*, *American Steamship Owners v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007) ("Deference to a plaintiff's choice of forum can, however, be overcome by application of the first-filed rule"); *Miller v. Unterreiner*, 2013 WL 6152362, at *6 (D. Colo. Nov. 22, 2013) ("In this case, however, Plaintiffs' choice of forum is not dispositive and, indeed, may deserve little weight given the earlier action commenced by [Defendant]."); *Global Tech Sys., Inc. v. Beco Dairy Automation, Inc.*, 2014 WL 12596721, at *8 (D.N.M. June 6, 2014) ("Under these circumstances, where the California litigation was filed first and both cases are substantially similar and arise out of the same or similar operative facts, the plaintiff's choice of forum in the New Mexico litigation loses its significance." (citations omitted)). In any event, a plaintiff's forum selection is not dispositive, and courts can transfer cases when the other interests of convenience and justice weigh in favor of the proposed transferee forum. *Id.; see also American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F. Supp. 1294, 1306 (D.N.J.1990).   For that reason, Plaintiff's choice of forum does not support retaining this case.

As to the second factor, Defendants' preference, this factor weighs in favor of transfer.  As to the third factor, whether the claim arose in another forum, the parties dispute where the alleged misconduct took place but do not provide any articulable basis in support of their respective positions.  The instant action clearly centers around Plaintiff's assertion that the applicable CBA does not authorize the Funds and the Union's request for RB Restoration's books and records in connection with the Audit and the subsequent monetary demand by the Funds.  Defendants claim that the Funds and the Union are administered and located in New York.  However, the parties dispute where the Audit was conducted – New York versus New Jersey.  Accordingly, the Court finds that where the claim arose is unclear, and thus, the third factor is neutral.

The Court must also consider the convenience of the parties and witnesses. According to Defendants, the Funds' auditors, the Union's officers, the trustees of the Funds, and the representatives of the Employer Association are all located in New York.  (Defs.' Reply Br. 5).  To the extent needed, those witnesses would be the individuals to testify "concerning the authority of the Funds' auditors to request records . . . and the application of the collective bargaining agreement to disputes concerning requests for records of a signatory employer."  (*Id.*)  Thus, New York is a convenient forum for Defendants' purposes.   In contrast, Plaintiff submits it has two witnesses: Plaintiff's bookkeeper and its owner.  These two witnesses are apparently located in Bergen County, New Jersey, which is 12 miles from the Eastern District of New York courthouse.  (*See* Harras Reply Decl., ¶¶ 6-7 & Exh. C).  There is no great inconvenience to either party that would result from litigating in New Jersey or New York.  Further, Defendants have not identified any witnesses or documents that would be unavailable in this district.  Finally, given the number of Defendants and their witnesses, at best, this factor tips slightly in favor of transfer.

Finally, considering the location of books and records, the Plan was administered in New York.  However, neither Plaintiff nor Defendants have identified any difficulty with transporting records and documents to one district versus the other.  Therefore, I find this factor is neutral.

Turning to the public interest factors, the parties do not address any of these factors, with the exception of Plaintiff's suggestion that this Court would have more familiarity with New Jersey state law governing "proprietary and privacy concerns" related to business records as part of the audit.  (Pl.'s Br. 6).  Yet, a plain reading of Plaintiff's Complaint reveals that this declaratory judgment action involves a federal ERISA-based plan and asserts only federal law claims for alleged ERISA violations.  Equally important, this factor relates to the trial judge's familiarity with "applicable state law "in diversity cases." *Jumara*, 55 F.3d at 879-880 (internal citations omitted). Plaintiff asserts only federal law claims as the basis for subject matter jurisdiction.  As such, there are no state law claims at issue for the Court to interpret, and thus this factor is not relevant.[7]

This Court's review of the other relevant public factors reveals that these factors either support transfer or are neutral.  Specifically, there does not appear to be any serious question of enforceability of any resulting judgment in another district.  Accordingly, this first factor is neutral. However, practical considerations could be gained transferring this matter to the Eastern District where Defendants have filed the EDNY Action against RB Restoration. Such efficiencies arise mainly from the Eastern District of New York Court's familiarity with the underlying core facts and legal issues in the first-filed case as well as the ability to coordinate both cases for discovery and/or for trial.  Thus, such practical considerations favor transfer.

---

[7] Defendants also contend that the court ordered sanctions imposed on counsel for RB Restoration in another matter pending in the Eastern District of New York serves as an additional basis for transfer.  (Defs.' Br. at 6; Harras Decl., ¶¶ 25-27; Ex. H). As this Court has found that transfer is appropriate based on a consideration and balancing of the *Jumara* factors, the Court declines to consider Defendants' alternative argument for transfer.

15

As to the third factor, the parties have not presented any evidence regarding court congestion or administrative difficulty, and thus the court does not consider these issues in determining the appropriateness of transfer.  As the ERISA-based plan at issue was administered in New York and the Defendants are located in New York, it appears that New York may have slightly more local interest in this case, despite Plaintiff having its principal place of business in New Jersey.  Thus, this tips the scale slightly in favor of transfer.  Finally, given the public policy behind ERISA and its federal framework, this factor does not appear to have any bearing on whether to transfer or retain this case.  On balance, the majority of relevant public interest factors weigh slightly in favor of transfer.

Accordingly, after considering both the private and public interest factors as dictated by the Third Circuit in *Jumara*, this Court finds that, on balance, transfer of this case to the Eastern District of New York is appropriate pursuant to Section 1404(a).

IV.   **CONCLUSION**

For the foregoing reasons, the Court transfers this case to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).  The Clerk shall not transfer this case for fourteen (14) days.  *See* L. Civ. R. 72.1(c)(1)(C).

In light of the Court's decision to transfer this case, the Initial Scheduling Conference scheduled for **February 28, 2022 at 4:30 p.m.** before the undersigned is **CANCELED**.

s/Jessica S. Allen
**JESSICA S. ALLEN**
**United States Magistrate Judge**

**DATED: February 24, 2022**

16